☐ ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -

**10 CRIM 520**

UNITED STATES OF AMERICA

    -v-

KENNETH STARR,

          Defendant.

- - - - - - - - - - - - - - - - - -x

:

:

:

:

:

**INDICTMENT**

10 Cr.

JUDGE SCHEINDLIN

## COUNTS ONE THROUGH TWENTY

(Wire Fraud)

The Grand Jury charges:

### The Defendant

1.  From at least in or about 1998 up to and including in or about 2010, KENNETH STARR, the defendant, has been the owner and president of Starr & Company, LLC, which purports to be in the business of managing the assets of, and providing financial planning advice to, high net-worth and celebrity clients. Since in or about June 2006, Starr & Company, LLC, has also owned and controlled a related entity, Starr Investment Advisers, LLC, a registered investment adviser (collectively, "Starr & Co."). The services provided by STARR through Starr & Co. include preparing tax filings, paying clients' bills, and helping wealthy individuals to identify suitable investments. In some cases, STARR assumed total control over his clients' financial lives by collecting their earnings, investing their savings, and paying their bills.

### Overview of STARR's Criminal Conduct

2.  At all times relevant to this Indictment, KENNETH STARR, the defendant, used his access to famous and powerful clients to burnish an image of trustworthiness, leading his clients to entrust him with management and control of their financial affairs and to accept his investment advice.  STARR then exploited the trust of his clients, systematically defrauding them to advance the financial interests of his family, his business, and/or his close associates.  STARR took particular advantage of his most vulnerable clients, including the elderly.

3.  At all times relevant to this Indictment KENNETH STARR, the defendant, defrauded his clients by engaging in at least two types of schemes.  First, where STARR exercised direct control over the personal bank accounts of his clients, STARR made and directed unauthorized transfers of funds to himself, his family, his business and/or his close associates.  STARR either failed to disclose the existence of these transfers or, when questioned about them, made material misrepresentations about the true purposes of the transfers.  Second, STARR defrauded his clients by inducing them to invest in risky, illiquid businesses and ventures in which he, his wife, and/or his close associates often held material financial interests, and he did so by misleading the clients about the risks associated with these investments and/or by failing to disclose material conflicts of interest.

When STARR's clients demanded refunds or other payments he could not meet, STARR simply transferred funds from another client to satisfy these demands.

### The Victims

4.   Through his criminal schemes, KENNETH STARR, the defendant, defrauded or attempted to defraud his clients of at least $59 million.  The victims of STARR's schemes include, but are not limited to, the following:

       a.   Victim # 1 is a former hedge-fund manager and well-known philanthropist.  STARR defrauded or attempted to defraud Victim # 1 and/or a foundation controlled by Victim # 1 of at least $2.4 million.

       b.   Victim # 2 is an actress.  STARR defrauded or attempted to defraud Victim # 2 of at least $1 million.

       c.   Victim # 3 is a former executive of a talent agency.  STARR defrauded or attempted to defraud Victim # 3 of at least $2 million.

       d.   Victim # 4, who is in his 70s, is the step-son of the deceased heir to a business fortune.  STARR defrauded or attempted to defraud Victim # 4 of at least $4 million.

       e.   Victim # 5, who is 99 years old, is the heiress to a business fortune.  STARR defrauded or attempted to defraud Victim # 5 and/or a limited liability company controlled by Victim # 5 of at least $18 million.

f.  Victim # 6 is a jeweler.  Victim # 7 is the wife of Victim # 6.  STARR defrauded or attempted to defraud Victim # 6 and Victim # 7 of nearly $14 million.

g.  Victim # 8, who is in his late 70s, is a film producer and businessman.  STARR defrauded or attempted to defraud Victim # 8 and/or various trusts controlled by Victim # 8 of at least $4.8 million.

h.  Victim # 9, who is in his 80s, is a playwright and screenwriter.  STARR defrauded or attempted to defraud Victim # 9 of at least $8.7 million.

i.  Victim # 10 is the ex-wife of a wealthy investor and businessman.  STARR defrauded or attempted to defraud Victim # 10 and/or a foundation and trust controlled by Victim # 10 of at least $4.5 million.

j.  Victim # 11, who is in her 80s, is an actress. STARR defrauded or attempted to defraud Victim # 11 of at least $100,000.

### Fraudulent Misappropriation of Funds

5.  From at least in or about January 2009 up to and including at least in or about April 2010, KENNETH STARR, the defendant, made or directed unauthorized transfers of funds from bank accounts of Starr & Co. clients to himself, his family, his business and/or his close associates.  To conceal the source and nature of these transfers, the funds were typically passed

4

through one of three accounts: two separate attorney trust accounts affiliated with the same attorney ("Attorney Account # 1" and "Attorney Account # 2," respectively) and an account held in the name of Marose LLC, a company affiliated with STARR and controlled in whole or in part by STARR ("Marose Account").

6.    With respect to each unauthorized transfer of funds, KENNETH STARR, the defendant, either: (a) failed to disclose the existence of the transfers to the clients whose funds were being moved; or (b) made material misrepresentations about the true purposes of the transfers.  For example, on multiple occasions, Starr & Co. clients -- and in some cases even Starr & Co. employees -- questioned why STARR had directed certain transfers of client funds to Attorney Account # 2.  In response, on multiple occasions, STARR claimed that the funds were being transferred so that they could be "bundled" with other client funds and collectively invested with a certain global financial services company ("Company").  In truth and in fact, and as STARR well knew, the funds were not going to be invested with the Company.  Rather, STARR used the funds to meet his own financial needs, as well as the needs of his family and his business.

7.    From at least in or about January 2009 up to and including at least in or about April 2010, KENNETH STARR, the defendant, made or directed unauthorized transfers of his clients' funds in connection with a number of purposes, including

but not limited to: (1) paying Starr & Co; (2) paying for a legal settlement with Victim # 9; (3) purchasing a new luxury condominium for at least $7.5 million; (4) diverting funds to himself and his family; and (5) repaying clients who had discovered unauthorized transfers of funds.

a.    <u>Starr & Co.</u>:  On a number of occasions, STARR misappropriated his clients' funds to pay Starr & Co., which in turn used the funds to cover its operating expenses and make payments to, among others, STARR and his wife.  To conceal these misappropriations, STARR passed the funds through Attorney Account # 1 and Attorney Account # 2.  For example, between on or about November 13, 2009 and on or about December 22, 2009, STARR unlawfully diverted, to a Starr & Co. bank account, $750,000 belonging to Victim # 1's foundation and $350,000 belonging to one of Victim # 8's trusts; all these funds were passed in the first instance through Attorney Account # 2 before being transferred to the Starr & Co. bank account.  By way of another example, on or about February 9, 2010, STARR made or directed an unauthorized transfer of $1.5 million from Victim # 10's trust account to Attorney Account # 1.  The following day, on or about February 10, 2010, STARR caused the $1.5 million to be transferred from Attorney Account # 1 to Attorney Account # 2.  The next day, on or about February 11, 2010, STARR caused that $1.5 million to be transferred from Attorney Account # 2 to a

Starr & Co. bank account.

b.    <u>Settlement with Victim # 9</u>: In or about 2009, KENNETH STARR, the defendant, entered into an agreement with Victim # 9 that related to, and settled, certain claims Victim # 9 had made against STARR.  Among other things, the settlement agreement obligated STARR and Starr & Co. to pay Victim # 9 approximately $4 million to redeem Victim # 9's investment in Martini Park, LLC.  Ultimately, the parties to the settlement agreed that STARR and Starr & Co. would have until on or about January 7, 2010 to pay $4 million to Victim # 9.  To make that required $4 million payment to Victim # 9, STARR, in fact, stole from the funds of his existing clients, namely, Victim # 3, Victim # 8, and Victim # 10.  To prevent Victim # 9 from learning the source of the funds, STARR passed these stolen funds through Attorney Account # 2.

c.    <u>Purchase of a Luxury Condominium</u>: Between in or about January 2010 and in or about April 2010, STARR caused unauthorized transfers of funds belonging to Victim # 2, Victim # 4, Victim # 5, and Victim # 8 to buy himself a luxury condominium on the Upper East Side of Manhattan that cost at least $7.5 million.

d.    <u>Payments to STARR and His Family</u>: STARR also misappropriated his clients' funds by directing the money to the Marose Account and then transferring the funds to himself and his

family, his investments, and Starr & Co.  For example, on or about July 14, 2009, STARR caused $750,000 to be transferred from Victim # 4 to Attorney Account # 2.  Approximately one week later, on or about July 22, 2009, STARR caused $250,000 to be transferred from Attorney Account # 2 to the Marose Account. Between on or about July 22, 2009, and on or about July 28, 2009, STARR directed the transfer of $50,000 from the Marose Account to one of his personal accounts, the transfer of $155,000 from the Marose Account to the Starr & Co. account, and the transfer of another $10,000 to an account associated with an investment STARR promoted with his clients.

        e.   <u>Responding to Client Complaints</u>: On at least two occasions in or about April 2010, STARR's clients discovered that he had misappropriated their funds and demanded repayment.  When Victim # 2 demanded that STARR return the $1 million he had misappropriated from her, STARR repaid Victim # 2 not with her own money, but with $1 million he diverted from the account of yet another client, namely, Victim # 3.  Similarly, when Victim # 1 demanded that STARR return funds STARR had misappropriated from her, STARR procured a loan from a certain individual ("Lender"); he paid Victim # 1 with the proceeds of that loan; he obtained a mortgage on the condominium that he had purchased with the proceeds of his fraud; and he then repaid the Lender with a portion of the mortgage proceeds.

8

## Statutory Allegation

8.    On or about the dates specified in the Table below, in the Southern District of New York and elsewhere, KENNETH STARR, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, STARR marketed his services as an accountant and financial adviser to clients, gained control over millions of dollars belonging to his clients, and misappropriated millions of dollars of his clients' assets by wiring his clients' funds to Attorney Account # 2 in the approximate amounts set forth in the Table below, all while failing to disclose the existence of the wire transfers and/or making material misrepresentations about the true purposes of the wire transfers.

| COUNT | DATE | VICTIM | AMOUNT |
|---|---|---|---|
| 1 | 7/14/09 | Victim # 4 | $750,000 |
| 2 | 10/8/09 | Victim # 4 | $125,000 |
| 3 | 11/2/09 | Victim # 1 | $250,000 |
| 4 | 11/3/09 | Victim # 8 | $150,000 |

9

| 5 | 11/18/09 | Victim # 1 | $250,000 |
|---|---|---|---|
| 6 | 11/25/09 | Victim # 1 | $250,000 |
| 7 | 12/18/09 | Victim # 8 | $350,000 |
| 8 | 1/5/10 | Victim # 10 | $2,000,000 |
| 9 | 1/5/10 | Victim # 3 | $1,000,000 |
| 10 | 1/7/10 | Victim # 8 | $2,500,000 |
| 11 | 1/14/10 | Victim # 4 | $800,000 |
| 12 | 3/24/10 | Victim # 10 | $1,000,000 |
| 13 | 4/13/10 | Victim # 2 | $1,000,000 |
| 14 | 4/13/10 | Victim # 5 | $750,000 |
| 15 | 4/13/10 | Victim # 4 | $250,000 |
| 16 | 4/15/10 | Victim # 5 | $4,250,000 |
| 17 | 4/16/10 | Victim # 5 | $750,000 |
| 18 | 4/16/10 | Victim # 8 | $145,000 |
| 19 | 4/16/10 | Victim # 8 | $105,000 |
| 20 | 4/26/10 | Victim # 3 | $1,000,000 |

(Title 18, United States Code, Section 1343.)

## COUNT TWENTY ONE

(Money Laundering)

The Grand Jury further charges:

9. The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as though fully set forth herein.

10. From at least in or about January 2009, through and including in or about April 2010, in the Southern District of New York and elsewhere, KENNETH STARR, the defendant, and others

known and unknown, unlawfully and willfully, and knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, proceeds of the wire fraud offenses charged in Counts One through Twenty of this Indictment, with the intent to promote the carrying on of specified unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, to wit, in misappropriating his clients' funds, STARR wired them to Attorney Account # 2 before diverting the funds to their ultimate destination to make it appear as if the funds were being directed to lawful and appropriate investments and were being received from a lawful and appropriate source.

(Title 18, United States Code, Section 1956(a)(1).)

## COUNT TWENTY TWO

(Fraud by an Investment Adviser)

The Grand Jury further charges:

11.  The allegations contained in paragraphs 1 through 8 of this Indictment are repeated and realleged as though fully set forth herein.

12.  In his capacity as an investment advisor, KENNETH

STARR, the defendant, engaged in a number of fraudulent and
deceptive practices.  In some cases, STARR induced his clients to
invest in certain risky and speculative investments by misleading
them about the risks of the investments.  In other cases, STARR
induced his clients to make investments in certain businesses and
ventures without disclosing to his clients certain material
conflicts of interest associated with these investments,
including that he, his wife, and/or his close associates held
undisclosed financial interests in these investments.  In still
other cases, STARR placed his clients' monies in risky,
speculative investments contrary to the express direction of his
clients or, more commonly, without informing his clients of the
investments at all.

### Investment Fraud Concerning Victim # 6 and Victim # 7

13.  In or about May 2006, KENNETH STARR, the defendant,
developed a close personal relationship with Victim # 6.  In or
about 2008, STARR advised Victim # 6 to make certain investments.
STARR represented that he carefully selected investments that
were sure deals, that he only permitted his close friends to
invest, and that STARR would be personally invested alongside
Victim # 6.  STARR also claimed that the investments would make
Victim # 7, the wife of Victim # 6, very rich in 2009.

14.  Based on these representations, between on or about
February 7, 2008, and on or about October 1, 2008, Victim # 6 and

Victim # 7 invested $13,875,000 in investments recommended by KENNETH STARR, the defendant.  Contrary to STARR's assurances, STARR induced Victim # 6 and Victim # 7 to invest in businesses and ventures that were highly risky and speculative. Furthermore, STARR put little or none of his own capital at risk in these investments.  By way of example, in or about May 2008 and June 2008, STARR caused Victim # 6 and Victim # 7 to invest $3 million in a Delaware limited liability corporation that, in turn, bundled the $3 million with monies of other investors to purchase $10 million worth of shares of a certain start-up internet company in China.  Contrary to STARR's assurances that he would only invest Victim # 6's money in sure deals, this $3 million investment was highly risky and speculative.  Furthermore, STARR did not invest any of his own money in this investment; rather, STARR obtained an interest only by assigning himself 25% of any returns beyond the first $20 million of returns generated by the investment.

15.  On other occasions, KENNETH STARR, the defendant, misrepresented the nature of the investment he induced Victim # 6 and Victim # 7 to make.  For example, on or about February 28, 2008, STARR caused Victim # 6 and Victim # 7 to invest $150,000 in Wind River LLC.  At the time of the investment, STARR failed to disclose that this was not an investment of any kind, but was instead a personal loan to one of STARR's close associates -- a

13

loan made to a shell corporation that STARR created on behalf of that close associate.

16.   On still other occasions, KENNETH STARR, the defendant, simply misappropriated some of the monies that he had induced Victim # 6 and Victim # 7 to invest.  For example, between in or about September 2008 and in or about October 2008, STARR caused Victim # 6 and Victim # 7 to make an additional $500,000 investment in a certain identification technology business. Shortly after Victim # 6 and Victim # 7 sent these additional funds, STARR diverted $195,000 of the $250,000 to his personal bank account.

17.   As of May 2010, Victim # 6 and Victim # 7 have only received approximately $200,000 in return for their investments in businesses and ventures selected by KENNETH STARR, the defendant.

### Investment Fraud Concerning Victim # 9

18.   In or about the 1990s, Victim # 9 retained KENNETH STARR, the defendant, for bill payment and investment advice. Over the ensuing years, STARR regularly approached Victim # 9 to present him with investment opportunities.  STARR generally described all the investment opportunities as good deals that would produce good outcomes.  Except on one occasion described in greater detail below, Victim # 9 always acceded to STARR's investment advice because he relied on STARR to provide him with

14

appropriate investment guidance and completely trusted him.

19. Between in or about 2005 and in or about 2007, KENNETH STARR, the defendant, persuaded Victim # 9 to make investments in three different speculative and highly risky ventures: (1) a certain proposed restaurant chain ("Restaurant Chain"); (2) a certain investment fund ("Investment Fund # 1"); and (3) another investment fund ("Investment Fund # 2"). Specifically, STARR induced Victim # 9 to invest at least $4 million in the Restaurant Chain, at least $3,472,000 in Investment Fund # 1, and at least $1 million in Investment Fund # 2. STARR failed to disclose that in truth and in fact, and as STARR well knew, the investments were highly risky and speculative investments. STARR likewise failed to disclose the existence of certain conflicts of interest STARR had with respect to each of these three investments. As of 2009, Victim # 9 had seen no return on his investments, and Victim # 9 ultimately recouped his initial investment only because STARR and certain affiliated individuals and entities agreed to redeem Victim # 9's shares in the Restaurant Chain, Investment Fund # 1, and Investment Fund # 2.

20. The only time that Victim # 9 declined to follow the investment advice of KENNETH STARR, the defendant, was when STARR approached Victim # 9 and asked him to invest in a certain movie production company ("Movie Company"). Victim # 9, who had experience in the movie industry, informed STARR that he did not

want to make any investments in the Movie Company because he
thought it was a bad investment.  Notwithstanding Victim # 9's
express refusal to invest in the Movie Company, on or about
October 12, 2006, STARR caused approximately $312,500 to be wired
from the bank account of a company controlled by Victim # 9 to an
account of the Movie Company.

21.  Victim # 9 terminated his business relationship with
KENNETH STARR, the defendant, in or about March 2007.  Several
months later, Victim # 9's new financial advisers discovered the
$312,500 transfer and asked Starr & Co. to provide documentation
concerning the transfer.  On or about October 17, 2007, an
employee of Starr & Co. sent Victim # 9's financial advisers a
copy of a purported agreement between Victim # 9 and the Movie
Company, pursuant to which Victim # 9 agreed to make a $312,500
investment in the Movie Company in exchange for which he received
a share of the Movie Company's earnings and a share of the fees
paid to a principal of the Movie Company.  Victim # 9 believed
his signature on the document was forged.  Victim # 9's financial
advisers accordingly requested that Starr & Co. provide the
original agreement.  When representatives of Victim # 9 went to
Starr & Co. to obtain the original agreement -- which the Movie
Company had mailed to Starr & Co. -- they located the unopened
envelope that the Movie Company had sent to Starr & Co.  Upon
opening the envelope, representatives of Victim # 9 discovered

that the "original agreement" was not signed by Victim # 9 at all. Indeed, the "original agreement" was not even an agreement between the Movie Company and Victim # 9, but was a proposed agreement between the Movie Company and a company controlled by Victim # 9.

### Investment Fraud Concerning Victim # 5

22.    Between in or about 2005 and in or about 2007, KENNETH STARR, the defendant, caused Victim # 5 to invest at least $1.5 million in Investment Fund # 1 and at least $5 million in Investment Fund # 2. Prior to these investments, STARR did not disclose that, as STARR well knew, the investments were highly speculative and risky, nor did he disclose certain conflicts of interest he had concerning these investments. In or about August 2009, law enforcement officers questioned Victim # 5's long-time attorney/adviser about Victim # 5's investment in Investment Fund # 1. Victim # 5's attorney informed STARR about the interview and asked certain questions about the investments. Subsequently, Victim # 5 received two checks in connection with her investments in Investment Fund # 1 and Investment Fund # 2, namely, a check dated August 28, 2009 in the amount of $1,521,600 from Investment Fund # 1 and a check dated August 28, 2009 in the amount of $2,759,313 from Investment Fund # 2.

### Investment Fraud Concerning Victim # 11

23.    Starting in or about the early 1990s, Victim # 11

retained KENNETH STARR, the defendant, for tax preparation, bill payment, and investment advice.  In the years that followed, STARR provided only intermittent reports on Victim # 11's assets and finances, but he did meet with Victim # 11 in person to discuss her assets.  At Victim # 11's meetings with STARR, he always insisted that everything was fine and this set her at ease.  In or about 2005, however, Victim # 11 terminated her relationship with Starr & Co. out of concern with the quality of his services.  After her files were transferred to a new accountant, Victim # 11 learned that STARR had invested her retirement funds in risky investments without her knowledge. Furthermore, Victim # 11 learned that the value of her retirement funds had steadily declined, notwithstanding STARR's assurances that everything was fine.  All told, Victim # 11 appears to have lost in excess of $100,000.

### Statutory Allegation

24.  From at least in or about 2005 through and including in or about April 2010, in the Southern District of New York and elsewhere, KENNETH STARR, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, used the mails and other means and instrumentalities of interstate commerce, directly and indirectly, (1) to employ a device, scheme, and artifice to defraud a client and prospective client; (2) to engage in a transaction, practice, and course of business which

18

operated as a fraud and deceit upon a client and prospective client; (3) to act as principal for his own account, knowingly to sell a security to and purchase a security from a client, and acting as broker for a person other than such client, knowingly to effect a sale and purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he was acting and obtaining the consent of the client to such transaction; and (4) to engage in an act, practice, and course of business which was fraudulent, deceptive, and manipulative, to wit, STARR persuaded clients to entrust him with their investment monies by promising to invest their monies in safe investments when in fact the investments were speculative and risky, and STARR also persuaded clients to invest in businesses and ventures in which he, his wife, and his close associates held undisclosed financial interests.

(Title 15, United States Code, Sections 80b-6 & 80b-17.)

### COUNT TWENTY THREE

(Securities Fraud)

The Grand Jury further charges:

25.  The allegations contained in paragraphs 1 through 8 and 12-23 of this Indictment are repeated and realleged as though fully set forth herein.

26.  From at least in or about 2005 through and including in

19

or about April 2010, in the Southern District of New York and elsewhere, KENNETH STARR, the defendant, and others known and unknown, unlawfully, willfully, and knowingly, directly and indirectly, by the use of a means or instrumentality of interstate commerce and of the mails, and of a facility of a national securities exchange, used and employed, in connection with the purchase or sale of a security registered on a national securities exchange and a security not so registered, a manipulative and deceptive device and contrivance in contravention of such rules and regulations as the Commission has prescribed, to wit, STARR persuaded clients to purchase securities by falsely promising that the securities were sure deals when in fact he selected highly risky investments as well as investments in which he, his wife, and his close associates held undisclosed financial interests.

(Title 15, United States Code, Sections 78j(b) & 78ff(a).)

### FORFEITURE ALLEGATION

(Counts One through Twenty)

27.    As the result of committing one or more of the wire fraud offenses in violation of Title 18, United States Code, Section 1343 alleged in Counts One through Twenty of this Indictment, KENNETH STARR, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all

property, real and personal, that constitutes and is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, including but not limited to the following:

a.    At least $28 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the wire fraud offenses alleged in Counts One through Twenty of this Indictment;

b.    All right, title and interest in real property and appurtenances located at 433 East 74th Street, Unit 1C, New York, NY 10021, together with all improvements and attachments thereto;

c.    All funds and other property on deposit at Citibank, N.A., account number 37408333, held in the name of Kenneth Starr and Marisa Starr, and all property traceable thereto;

d.    All funds and other property on deposit at Citibank, N.A., account number 9935666503, held in the name of Kenneth Starr and Diane Passage, and all property traceable thereto;

e.    All funds and other property on deposit at Citibank, N.A., account number 967723574, held in the name of Starr & Co. LLC, and all property traceable thereto;

f.    All funds and other property on deposit at City National Bank, account number 665063070, held in the name of Kenneth Starr, and all property traceable thereto;

g.    All funds and other property on deposit at City National Bank, account number 665079570, held in the name of Marose LLC, and all property traceable thereto;

h.    All funds and other property on deposit at City National Bank, account number 665030571, held in the name of Marose LLC, and all property traceable thereto;

i.   All funds and other property on deposit at
     Signature Bank, account number 1501395923, held in
     the name of Colcave, LLC, and all property
     traceable thereto;

j.   All funds and other property on deposit at
     Signature Bank, account number 26013576, held in
     the name of Poledance Superstar, and all property
     traceable thereto;

k.   All funds and other property on deposit at Bank of
     America, account number 483011476716, held in the
     name of Wind River LLC, and all property traceable
     thereto;

l.   All funds and other property on deposit at Bank of
     America, account number 483011481772, held in the
     name of Wind River LLC, and all property traceable
     thereto;

m.   All funds and other property on deposit at Bank of
     America, account number 488010489864, held in the
     name of Consulting Identification Systems LLC, and
     all property traceable thereto;

n.   All funds and other property on deposit at Bank of
     America, account number 488010489851, held in the
     name of Consulting Identification Systems LLC, and
     all property traceable thereto;

o.   All funds and other property on deposit at Bank of
     America, account number 780678422, held in the
     name of Martini Park LLC, and all property
     traceable thereto;

p.   All funds and other property on deposit at J.P.
     Morgan Chase Bank, account number 967723574, held
     in the name of Starr & Co. LLC, and all property
     traceable thereto;

q.   All funds and other property on deposit at J.P.
     Morgan Chase Bank, account number 9361718112, held
     in the name of Diane Passage, and all property
     traceable thereto;

r.   All funds and other property on deposit at J.P.
     Morgan Chase Bank, account number 22016047, held
     in the name of Diane Passage, and all property

22

traceable thereto;

s.   All funds and other property on deposit at J.P.
     Morgan Chase Bank, account number 3066348886, held
     in the name of Diane Passage, and all property
     traceable thereto; and

t.   All funds and other property on deposit at UBS AG
     in account number 101-WA-258641-000, and all
     property traceable thereto.

## FORFEITURE ALLEGATION

(Count Twenty One)

28.   As the result of committing the money laundering

offense in violation of Title 18, United States Code, Section

1956 as alleged in Count Twenty One of this Indictment, KENNETH

STARR, the defendant, shall forfeit to the United States pursuant

to Title 18, United States Code, Section 982(a)(1), all property,

real and personal, involved in the money laundering offense and

all property traceable to such property, including but not

limited to the following:

a.   At least $28 million in United States currency, in
     that such sum in aggregate is property
     representing the amount of property involved in
     the money laundering offense alleged in Count
     Twenty One of this Indictment;

b.   All right, title and interest in real property and
     appurtenances located at 433 East 74th Street,
     Unit 1C, New York, NY 10021, together with all
     improvements and attachments thereto;

c.   All funds and other property on deposit at UBS,
     N.A.,in account number 101-WA-258641-000, and all
     property traceable thereto;

d.   All funds and other property on deposit at City
     National Bank, account number 665079570, held in

23

the name of Marose LLC, and all property traceable thereto;

e.   All funds and other property on deposit at City National Bank, account number 665030571, held in the name of Marose LLC, and all property traceable thereto;

f.   All funds and other property on deposit at Signature Bank, account number 1501395923, held in the name of Colcave, LLC, and all property traceable thereto;

g.   All funds and other property on deposit at Signature Bank, account number 26013576, held in the name of Poledance Superstar, and all property traceable thereto;

h.   All funds and other property on deposit at Bank of America, account number 780678422, held in the name of Martini Park LLC, and all property traceable thereto; and

i.   All funds and other property on deposit at J.P. Morgan Chase Bank, account number 967723574, held in the name of Starr & Co. LLC, and all property traceable thereto.

### FORFEITURE ALLEGATION

(Counts Twenty Two and Twenty Three)

29.   As the result of committing one or more of the fraud in the sale of securities offenses in violation of Title 15, United States Code, Sections 80b-6, 80b-17, 78j(b), and 78ff(a) alleged in Counts Twenty Two and Twenty Three of this Indictment, KENNETH STARR, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived, directly and

24

indirectly, from gross proceeds traceable to the commission of the offenses, including but not limited to the following:

a. At least $29,259,500 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the securities offenses alleged in Counts Twenty Two and Twenty Three of this Indictment;

b. All right, title and interest in real property and appurtenances located at 433 East 74th Street, Unit 1C, New York, NY 10021, together with all improvements and attachments thereto;

c. All funds and other property on deposit at Citibank, N.A., account number 37408333, held in the name of Kenneth Starr and Marisa Starr, and all property traceable thereto;

d. All funds and other property on deposit at Citibank, N.A., account number 9935666503, held in the name of Kenneth Starr and Diane Passage, and all property traceable thereto;

e. All funds and other property on deposit at Citibank, N.A., account number 967723574, held in the name of Starr & Co. LLC, and all property traceable thereto;

f. All funds and other property on deposit at City National Bank, account number 665063070, held in the name of Kenneth Starr, and all property traceable thereto;

g. All funds and other property on deposit at City National Bank, account number 665079570, held in the name of Marose LLC, and all property traceable thereto;

h. All funds and other property on deposit at City National Bank, account number 665030571, held in the name of Marose LLC, and all property traceable thereto;

i. All funds and other property on deposit at Signature Bank, account number 1501395923, held in

the name of Colcave, LLC, and all property traceable thereto;

j.   All funds and other property on deposit at Signature Bank, account number 26013576, held in the name of Poledance Superstar, and all property traceable thereto;

k.   All funds and other property on deposit at Bank of America, account number 483011476716, held in the name of Wind River LLC, and all property traceable thereto;

l.   All funds and other property on deposit at Bank of America, account number 483011481772, held in the name of Wind River LLC, and all property traceable thereto;

m.   All funds and other property on deposit at Bank of America, account number 488010489864, held in the name of Consulting Identification Systems LLC, and all property traceable thereto;

n.   All funds and other property on deposit at Bank of America, account number 488010489851, held in the name of Consulting Identification Systems LLC, and all property traceable thereto;

o.   All funds and other property on deposit at Bank of America, account number 780678422, held in the name of Martini Park LLC, and all property traceable thereto;

p.   All funds and other property on deposit at J.P. Morgan Chase Bank, account number 967723574, held in the name of Starr & Co. LLC, and all property traceable thereto;

q.   All funds and other property on deposit at J.P. Morgan Chase Bank, account number 9361718112, held in the name of Diane Passage, and all property traceable thereto;

r.   All funds and other property on deposit at J.P. Morgan Chase Bank, account number 22016047, held in the name of Diane Passage, and all property traceable thereto; and

s.  All funds and other property on deposit at J.P. Morgan Chase Bank, account number 3066348886, held in the name of Diane Passage, and all property traceable thereto.

### Substitute Asset Provision

30.  If any of the forfeitable property described above in paragraphs 27, 28, and 29, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981(a)(1)(C) & 982(a)(1);
    Title 21, United States Code, Section 853(p);
    Title 28, United States Code, Section 2461.)

_____          _____
GRAND JURY FOREPERSON                     PREET BHARARA
                                          United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### KENNETH STARR,

Defendant.

### INDICTMENT

10 Cr. ___ (___)

(18 U.S.C. § 18  U.S.C.  § 1343,
1956(a)(1)
15 U.S.C.  § 78j(b) & 78ff(a), 80b-6 &
80b.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

6/10/10
SAS

Case assigned to J Schindler

RJ Gorenstein