FLORA EDWARDS
ATTORNEY AT LAW
A PROFESSIONAL CORPORATION

ADMITTED IN NY AND NJ

115 BROADWAY - SUITE 1505 ★ NEW YORK, NEW YORK 10006 ★ TEL: 212-785-3344 ★ FAX: 212-577-2865 ★ E-MAIL: FMELAW@AOL.COM

February 25, 2011

**By Fax to (212) 805-7920**
**and Federal Express**
Hon. Shira A. Scheindlin
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street - Room 1620
New York, New York 10007

Re: *United States v. Starr*
10 CR 520 (SAS)

Your Honor:

The within submission is made in response to the Second Disclosure by Probation which was received after Defendant Starr submitted his sentencing memorandum to the Court. In addition, Mr. Starr responds to the sentencing memorandum submitted by the Government on February 23, 2011.

Because the most recent Disclosure of the Presentence Report was not received until today at 2:22 pm by e-mail Mr. Starr respectfully requests an extension of time until Monday morning, to submit and serve his objections to Probation's most recent disclosure.

The following objections to the Second Disclosure in the pre-sentence report are highlighted because they potentially have an impact on the sentence to be imposed:

**A. The Second Disclosure Overstates and Mischaracterizes The Loss Amount**

The justification for the sentencing recommendation overstates the loss amount by more than $3,000,000. (PSR at 25). The stipulated loss amount is $33,312, 782 - not $36.5 million. Nor, as the restitution chart accurately reflects, is this the amount actually owed in restitution because it fails to take into account the $2.7 million which has already been

repaid to the victims, the $750,000 which was never consummated or the amount which the victims recovered from the investments themselves reducing the total amount of restitution to $29,112,782.69. Nor is it accurate that Starr "siphoned" the entire amount from his clients. Mr. Starr did not misappropriate $33,312, 782 from his clients. Of the $33 million included in the loss amount, approximately 50% is comprised of investments related to Count 22 to which Mr. Starr pled (Investment Advisor Fraud).

Further, Mr. Starr objects to the statement that he intended to steal $6 million. (PSR at 25) There is not even an allegation, much less any factual basis for this assertion, and it should be stricken.

**B. The Stipulated Loss Amount Does Not And Cannot Take Into Account The Eventual Worth Of The Investments**

The Government's characterization of the offense conduct as a Ponzi scheme is inaccurate. Black's Law Dictionary describes a Ponzi scheme as "A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. • • Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds." Here there is no factual predicate for the allegation that Starr was engaged in a "Ponzi Scheme".

Mr. Starr has accepted full responsibility for misappropriating client funds and using part of the funds to repay other clients. However, the misappropriation of funds is simply not a Ponzi Scheme. He has also accepted responsibility for failing to make complete and accurate disclosure regarding certain client investments. However, with the exception of Wind River which was a loan, every single company was a valid revenue producing entity. That certain companies did not yield the expected return and did not offer immediate liquidity does not make the investment part of a Ponzi scheme.

And herein lies the fundamental impediment to the accurate calculation of loss in a securities case . The extent of loss to Starr's clients has been calculated by zeroing out the value of the investment, assuming that there will never be any recovery. However, in time these investments may prove to possess some or all of the value of the original investment or even to yield profitable results. See *United States v. Butler*, 264 F.R.D. 37, 39 (E.D.N.Y.,2010)(J. Weinstein)

For example, Victim #6, as it relates to the investment referenced by the Government in relation to Victim #6, it should be noted that Victim #6 has already sold his interest in the Company pursuant to buy-out offer which permitted him to recover 60% of his investment. While this amount is appropriately deducted as an offset against the restitution amount, it is not reflected in the loss amount.

In time, it is anticipated that the value of other investments well be realized as well. For example, approximately one-third of the losses attributed to Victim #6's consist of an investment in a Chinese internet company. Notwithstanding the extensive documentation provided to Victim #6 setting forth the risks involved, Mr. Starr concedes that the disclosure may not have been sufficiently thorough as to the immediately liquidity of the investment. That said, the investment promises to produce a handsome return. At the time of the investment, the company was - ranked No. 1 in Shanghai Business & Commerce. Today it is in the top 180 sites (1/100th of 1%) among 2.79 million registered sites in China and is ranked in the top 1,500 sites (1/10th of 1%) among 240 million registered sites worldwide. There is every reason to believe that by the end of this year, Victim #6 will not only recoup his investment through the sale of his interest in this company but that the return will also compensate him for any other losses he may have sustained in the other investments. Indeed, the Government recognizes the potential values of these investments by agreeing that any gains from the sale of the investments offset the restitution amount. However, because the guidelines cannot accurately calculate the potential worth of the investment, the actual loss has been artificially inflated.

## C. A Guideline Sentence Is Far Greater Than Necessary To Achieve The Goals Of Sentencing

District courts are free to fashion a sentence which, in addition to the Guidelines, reflects the goals to be achieved in sentencing as is codified in18 U.S.C. §3553 . In addition, district courts are now free to "impose a sentence that varies from the Guidelines based solely on ... disagreements with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *United States v. Cavera*, 550 F.3d 180 (2d Cir. 2008).

Here, the mechanistic application of the Guidelines, while not producing a result that is patently unreasonable as a matter of law, fails to take into consideration the requirements of 3553(a)(6) which reflect the intent to eliminate national disparity in sentencing. *United States v. Fernandez*, 443 F.3d 19, 31 n. 9 (2d Cir.2006).

The problems inherent in the application of the Guidelines to fraud conviction in general is expressed in a letter dated June 28, 2010 to the Chair of the United States Sentencing Commission, in which the Director of the Office of Policy and Legislation of the United States Department of Justice expressed his concern that judges across the country have been sentencing fraud offenders, especially in high-loss cases, ""inconsistently and without regard to the federal sentencing guidelines." The Department concludes that ""[t]he current sentencing outcomes in [fraud] cases are unacceptable, and the Commission should determine whether some reforms are needed. The DOJ Letter recommends, *inter alia*, a systemic analysis and synthesis by the Commission of the federal sentencing data it has collected, followed by a report that ""explore[s] how to create a single sentencing regime that will earn the respect of the vast majority of judges, prosecutors, defense attorneys, Members of Congress, probation officers, and the public."It also suggests that ""reforms might include amendments to the sentencing guideline for fraud offenses." *United States v. Ovid*, Slip Copy, 2010 WL 3940724, 1 (E.D.N.Y.,2010)(J. Gleeson).

It is worth noting that the changes in the Guidelines over the past decade reflect Congress' increased focus on investment fraud. Had Starr had been sentenced under the pre-November 1, 2001 guidelines, their sentencing ranges would have been 57 to71 months. The spike in the current Guidelines applicable to Mr. Starr reflects the 1 point increase in the guideline level for fraud from six to seven and reflects the multiple enhancements which are intrinsic to the very offenses to which he pled (4 points for being an investment advisor + 2 points for money laundering) all of which raised the Guideline level from 28 to 32.

Indeed, once freed from the mandatory application of the Guidelines, and recognizing the fact specific nature of each case, it appears that nationally judges have generally used their discretion to impose sentences more consistent with the pre-2001 guideline ranges, absent the multiple enhancements. As indicated below, defendants who were not cooperators and were responsible for losses in excess of $100 million were generally sentenced to double digit terms of imprisonment. In contrast, those who were responsible for losses of less than $100 million were generally sentenced to single-digit terms:

| Case/Citation | Estimated Loss Amount | Guideline Range | Sentence |
|---|---|---|---|
| U.S. v. Madoff<br>09 CR 213 (DC) | $50 billion | life | 150 years |
| U.S. v. Forbes<br>2007 WL 141952<br>(D. Conn. 2007) | $14 billion | 112 to 149<br>(1999 Guidelines) | 10 years |
| U.S. v. Ebbers (SDNY)<br>02 CR 01144 (BSJ) | $11 billion | 360 to life | 25 years |
| U.S. v. Kamar (EDNY)<br>04 CR 846 (ILG) | $2.2 billion | life | 144 months |
| U.S. v. Kohler (SD Fla)<br>07 CR 20466 (PCH) | $826 million | | 5 years - each defendant |
| U.S. v. Hoffenberg | $462.6 million | | 20 years |
| U.S. v Rigas(John)(SDNY)<br>02-cr-01236-LBS | $200 million | 360 to life | 15 years |
| U.S. v Bennett (SDNY)<br>97 CR639 (JSM) | $109,088,889.11 | 188-235 months | 22 years |
| U.S. v. Adelson (SDNY)<br>441 F. Supp 2d 502 | between $50 and $100 million | Life | 42 months |
| U.S. v. Cataggio (EDNY)<br>98 CR 1129 (RJD) | $80 million | 210 to 262 months | 141 months |
| U.S. v. Olis<br>450 F.3d 583 (5th Cir. 2006) | $79 million | 151 to 188 months | 6 years |
| U.S. v. Hotte (EDNY)<br>97 CR 669 (SJ) | $67 million | | 108 months |

| | | | |
|---|---|---|---|
| U.S. v Turk (SDNY)<br>(J. Buchwald)<br>626 F.3d 743(2d Cir 2010) | $29,660,192.36 | | 60 months |
| U.S. v Levenson (EDNY)<br>01-cr-1243 (CBA) | $25 million | | 50 months |
| U.S. v Smirlock (SDNY)<br>00 CR-1292 (GEL) | $12.6 million | 46 to 57 months | 48 months |

Contrary to the sentencing recommendation made by Probation, and the characterization by the Government, the losses in this case, while significant, are not "astronomical" when compared with other prosecutions. They are simply not of the same character and magnitude as the securities-fraud prosecutions of those who have been responsible for wreaking unimaginable losses on major corporations and, in particular, on their companies' employees and stockholders, many of whom lost their pensions and were financially ruined. Nor is this case in any way comparable to the prosecutions relied on by Probation in fashioning its recommendation where the losses ranged from $109 million to $50 billion (See PSR at 27).

Here, the victims did not number in the hundreds or thousands. There are nine victims - all of whom are incredibly wealthy individuals with millions of dollars of discretionary funds. None of these victims were "ruined" financially by Mr. Starr conduct. This is said not to diminish the wrongfulness of the offense, but simply to place the offense in the proper context.

Nor, contrary to the Government's urging, should the Court disregard Mr. Starr's lifetime of good and honorable work due to a lapse in judgment over a relatively brief period of time. While the conduct for which Mr. Starr stands convicted is not confined to a single transaction, it must be set against an unblemished career which spanned more than four decades.

Kenneth Starr stands convicted of a serious offense and has accepted full responsibility for his conduct. However a man should not be judged solely by the worst thing he has ever done. There are mitigating circumstances. There is a family that needs his emotional

and financial support[1] .

There is no reason why Kenneth Starr should be sentenced to a term of imprisonment double that which has been imposed on similarly situated offenders (*See for example*, Olis, Addison, Levenson and Turk, *supra*). Nor is a sentence of 121 to 151 month imposed upon a 67 year old man necessary to fashion an appropriate punishment. Given the life expectancy of his family, the likelihood that Mr. Starr will survive a 10 year sentence is minimal. There is no reason for him to die in jail for what he has done. A sentence of 60 months is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a)(2).

Respectfully,

Flora Edwards

cc: AUSA Michael Bosworth
(By ECF and e-mail to michael.bosworth@usdoj.gov)

[1]Notably, contrary to the Government's assertion the former Mrs. Starr was diagnosed with MS at the age of 17 (See Exhibit A-11)- long before she ever met Kenneth Starr. He knew she suffered from MS when he married her and committed to her care. The reasons for the dissolution of the marriage are more fully explained in the Presentence Report .(PSR at ¶54 )